IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| KOHALA COAST ENTERPRISES, LLC, | ) ) ) | Civil NO. 12-00552 SOM-WRP |
| Plaintiff, | ) ) ) ) ) | ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT OR ORDER AND DISMISSING VERIFIED COMPLAINT WITHOUT PREJUDICE FOR LACK OF PROSECUTION |
| vs. | ) ) | |
| THE UNIDENTIFIED SHIPWRECKED VESSEL, her apparel, tackle, appurtenances and cargo, *in rem*, | ) ) ) ) | |
| Defendants. | ) ) ) | |
| _____ | ) | |

**ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT OR ORDER AND
DISMISSING VERIFIED COMPLAINT
WITHOUT PREJUDICE FOR LACK OF PROSECUTION**

**I.      INTRODUCTION.**

Gary Crothers, the owner and principal manager of
Plaintiff Kohala Coast Enterprises, LLC, believes he has located
a shipwreck covered by a coral reef in the near-shore waters of
the Big Island of Hawaii.  Kohala Coast filed this in rem action
more than eleven years ago, seeking a determination that it is
the owner of the vessel's treasure or that, if someone else is
the owner, it receive a percentage of the value of the treasure
as a maritime salvor.  The court arrested the vessel, and
appointed Kohala Coast as substitute custodian.  On January 4,
2013, the court ordered Kohala Coast to refrain from touching the

vessel until it obtained all necessary federal, state, and local permits.

Since 2011, very little progress has been made with respect to obtaining proper permits to excavate the vessel.  In October 2022, the court ordered Kohala Coast to show cause why this action should not be dismissed because it had not progressed with obtaining the necessary permits.  The court ultimately decided not to dismiss this action at that time because Kohala Coast had received what it calls a Nationwide Permit from the U.S. Army Corps of Engineers authorizing it to dredge or excavate approximately 10.7 cubic yards of material.  That permit specifically noted that it did not "obviate[] your responsibility to obtain other Federal, state, and/or local authorizations required by law before commencing work."  ECF No. 139-2, PageID # 824.

In declining to dismiss the action in 2022 because Plaintiff had demonstrated some progress in the case, this court stated, "Which local, state, or federal laws apply to this case may be disputed, but it is Plaintiff's obligation to show which laws apply and how it has sought to comply.  No later than a year from the issuance of this order, Plaintiff shall file a status report with respect to its attempts to secure all necessary permits.  In the report, Plaintiff should identify the applicable local, state, and federal laws and detail Plaintiffs attempts to

comply with them." ECF No. 143. The court then ordered that, "if, upon filing its next status report, Plaintiff does not convince this court that it has obtained all necessary permits and authorizations or is well on its way to doing so this court may dismiss the case sua sponte." *Id.*

On October 5, 2023, instead of filing the contemplated status report detailing what permits are necessary and explaining how Kohala Coast has obtained those permits or is well on its way to doing so, Kohala Coast filed the present motion for relief from the October 2022 order. The motion demonstrates that Plaintiff has made little, if any, progress towards obtaining the necessary permits, instead arguing that the Nationwide Permit from the U.S. Army Corps of Engineers relieves it from any other permitting requirement. That federal permit was obtained before this court issued its October 2022 order. In other words, this case has not progressed at all in the year since that order. Because the Nationwide Permit on its face does not relieve Kohala Coast from obtaining all necessary federal, state, and local authorizations, and because Kohala Coast has failed to prosecute this action or to clearly identify necessary permits and make progress towards obtaining them, the court denies the motion and dismisses the case without prejudice. Having reviewed the briefing and conducted a hearing, the court dissolves its orders

arresting the vessel and appointing Kohala Coast as substitute custodian.

## II.        BACKGROUND.

On or about February 16, 2011, Gary Crothers and his wife wrote an initial proposal to then-Governor Neil Abercrombie, then-Hawaii Attorney General David Louie, and state legislator Mark Nakashima.  Crothers explained that he had recovered two artifacts from an "Acapulco-to-Manila bound Spanish Treasure Galleon Shipwreck" (the "Vessel").  Crothers said that he believed that this undisturbed sunken vessel, located in shallow water approximately 100 yards off a Big Island shore, contains at least thirty tons of silver bullion and coins, hundreds of pounds of gold coins, many pounds of large emeralds, and various luxury items.  *See* ECF No. 142-2, PageID # 850.

This case was filed on October 15, 2012, with Kohala Coast seeking 1) a declaration that the Vessel is subject to the admiralty laws of abandonment and the law of finds; 2) a declaration that no other government has jurisdiction or authority to interfere with the exploration and recovery of the Vessel; 3) a determination that Kohala Coast owns the Vessel; 4) a determination that, if someone else is determined to be the owner of the Vessel, Kohala Coast is entitled to a liberal salvage award; 5) a determination that Kohala Coast has the sole and exclusive right to conduct recovery operations with

4

respect to the Vessel; and 6) a determination that, if any
artifacts are recovered from the Vessel, Kohala Coast is the
owner of those artifacts or that the artifacts be sold to
satisfy any salvage award.  *See* ECF No. 1.

On January 4, 2013, in an order authorizing the
issuance of a warrant for the maritime arrest of the Vessel,
this court ordered that

> prior to any physical contact with the
> Vessel, Plaintiff is responsible for
> obtaining any necessary permits and
> authorizations from local, state or federal
> authorities, including but not limited to
> authorities whose areas of expertise and
> enforcement are the ocean, environment,
> endangered or threatened species, historic
> preservation, and/or cultural protections
> or preservation.  Plaintiff shall also
> comply with all applicable local, state or
> federal statutes or regulations.

ECF No. 22, PageID # 128.

On August 27, 2014, the court administratively closed
the case because Kohala Coast, while filing a series of status
reports, had not shown that it was actively litigating this
matter.  *See* ECF No. 75.  Although the case was briefly
reopened with respect to a motion for mandamus and related
appeal, the court again administratively closed it in April
2017.  *See* ECF No. 115.

In July 2022, following years of administrative
closure, this court reopened the case and ordered Kohala Coast
to show cause why this action should not be dismissed for lack

5

of prosecution, as nearly four years had passed since Kohala Coast had explained what permits it would be seeking. The court ordered Kohala Coast to "explain what its end goal is in this case, how that end goal can be achieved, and how that end goal is tied to claims in its Verified Complaint. If Plaintiff demonstrates that it has been actively pursuing the necessary permits, this case will not be dismissed . . . ." ECF No. 138.

Kohala Coast responded that it had been working with the U.S. Army Corps of Engineers since the fall of 2018 to secure a Nationwide Permit to conduct the initial stage of its salvage operation. ECF No. 139, PageID # 813. Kohala Coast attached a letter dated June 16, 2022, from the U.S. Army Corps of Engineers that approved Kohala Coast's Project Design Plan. *See* ECF No. 139-1. The following day, June 17, 2022, the U.S. Army Corps of Engineers issued a formal written notice to proceed, authorizing Kohala Coast to "dredge/excavate an estimated 10.7 cubic yards of material within an approximate total area of 337 square feet (0.008 acre) at three submerged sites in . . . Hawaii". *See* ECF No. 139-2, PageID #824. This is the "Nationwide Permit" that Kohala Coast relies on in its motion.

The U.S. Army Corps of Engineers' "Nationwide Permit" of June 17, 2022, "reiterate[d] that neither the Corps' [June 16, 2022] NWP verification nor this notification to proceed

with work in navigable waters of the U.S. obviates your responsibility to obtain other Federal, state and/or local authorizations required by law before commencing work." ECF No. 139-2, PageID #824.

On October 5, 2022, based on Kohala Coast's response with respect to the Nationwide Permit, the court declined to dismiss the case. *See* ECF No. 143. However, the court stated:

> Plaintiff asked this court to find that it has actively pursued the necessary permits. See ECF No. 139. This court will not make that finding. Since 2013, this Court has maintained that "Plaintiff is responsible for obtaining any necessary permits and authorizations from local, state or federal authorities[.]" *See* ECF No. 22, PageID # 128. Plaintiff has apparently not obtained all necessary permits, and the record does not suffice to allow the requested finding.
>
> Which local, state, or federal laws apply to this case may be disputed, but it is Plaintiff's obligation to show which laws apply and how it has sought to comply. **No later than a year from the issuance of this order, Plaintiff shall file a status report with respect to its attempts to secure all necessary permits.  In the report, Plaintiff should identify the applicable local, state, and federal laws and detail Plaintiffs attempts to comply with them.**
>
> Defendant urges this court to dismiss Plaintiff's action. *See* ECF No. 142. This court will not dismiss the case at this time because Plaintiff's Statement of Current Status satisfies the court that Plaintiff has made forward progress in this case. This is particularly demonstrated by

> Plaintiff's receipt of the U.S. Army Corps
> of Engineers' Approval of the Project
> Design Plan.  *See* ECF No. 139-1, Page ID #
> 822[-]23.  Even if Plaintiff has not
> obtained all necessary permits and
> authorizations from the authorities,
> Plaintiff has continued to advance the
> case, making dismissal for lack of
> prosecution unwarranted at this time.  That
> being said, **if, upon filing its next status
> report, Plaintiff does not convince this
> court that it has obtained all necessary
> permits and authorizations or is well on
> its way to doing so this court may dismiss
> the case sua sponte**.

ECF No. 143 (emphasis added).

On October 5, 2023, Kohala Coast filed its Motion for Relief From Judgment or Order instead of filing the requested status report.  *See* ECF No. 144.  The motion does not clearly identify the applicable local, state, and federal laws that Kohala Coast must comply with before excavating the Vessel or detail its attempts to comply with them.  Instead, Kohala Coast attaches a declaration with lengthy emails but little substance.  The motion argues that it has received a "Nationwide Permit" from the U.S. Army Corps of Engineers that allows it to conduct preliminary excavation of the sunken vessel.  Kohala Coast conceded at the hearing on this matter that the purported "Nationwide Permit" is the same authorization from the U.S. Corps of Engineers that Kohala Coast submitted to the court over a year ago.

The motion asks this court to determine that the
"Nationwide Permit" is sufficient to allow Kohala Coast to
conduct preliminary excavation of the sunken vessel and that
the State of Hawaii should be precluded from asserting that its
permitting scheme(s) also apply.  The court denies the request.
The "Nationwide Permit" itself states that it does not
"obviate[] your responsibility to obtain other Federal, state
and/or local authorizations required by law before commencing
work."  ECF No. 139-2, PageID #824.  Kohala Coast's motion
ignores this language completely.

Kohala Coast's motion makes clear that over the past
year it has made little or no progress in obtaining all
necessary permits and authorizations, as required by the court
in its order of October 5, 2022.  *See* ECF No. 143.  Kohala
Coast submitted a Conservation District Use Application for
exploratory excavations, HA-3920.  On or about May 3, 2023, the
State of Hawaii determined that that application was deficient,
noting that the application failed to include a description of
"Best Management Practices or measures that will be taken to
mitigate potential impacts."  ECF No. 147, PageID # 1160.  The
application allegedly failed to include "the full excavation"
or "the coral remediation plan."  *Id.*  The State told Kohala
Coast that the proposed extraction might involve a historic
site such that "written concurrency by the State Historic

9

Preservation Division of no historic properties affected; or effect, with proposed mitigation commitments must be received prior to decision making . . . ." *Id.*  It advised Kohala Coast that it did not appear that the proposed excavation was exempt from publication of an environmental assessment under Hawaii law.  *Id.*  It stated that Kohala Coast's environmental assessment was deficient.  *Id.*  Kohala Coast sought to keep the location of the proposed excavation from the public, but the State said that "the environmental review process is a very open process that encourages public participation."  *Id.*

Kohala Coast has long been concerned that Hawaii's public notice provisions would require it to reveal the precise location of the Vessel, which would be an invitation to scavengers and others to take artifacts from the Vessel.  For example, in July 2022, he sent an email in which he stated that, as the substitute custodian of this court, "I determine that this process cannot be engaged in as the public release of this information would pose a direct threat to the health and safety of all of my crew . . . and a direct and ongoing hazard to the sensitive environment in the area."  ECF No. 142-5, PageID # 901.  Kohala Coast has therefore objected to any process including public disclosure of the location of the Vessel (such as the environmental assessment required by the Hawaii Environmental Policy Act, chapter 343 of Hawaii Revised

10

Statutes), arguing that the "law does not have a higher purpose than the common law of human safety." *Id.*

It appears that Kohala Coast submitted another Conservation District Use Application for exploratory excavations, HA-3922.  On or about July 24, 2023, the Department of Land and Natural Resources ("DLNR") responded that it was "unable to process your application because it is incomplete.  You have not identified a land use that you are applying for, nor have you responded to the inquiries in the application."  ECF No. 147, PageID # 1164.  It is not clear what "land use" applies here, but, in any event, DLNR said, "Statements made under **Proposed Use** in the application indicate an unwillingness to comply with Hawai`i State law as it relates to the Conservation District and public trust land."  *Id.*, PageID # 1165.  With respect to historic and cultural resources, DLNR stated that while Kohala Coast "discusses some historic events," Kohala Coast was also saying, "I am not a 'qualified Historian' and do not claim to be, and there is no such 'requirement' for a Salv[o]r to be a 'qualified historian.'"  *Id.*  With respect to cultural impacts, Kohala Coast's application said that making "any of this public" would be without Kohala Coast's consent and would be "reckless, potentially dangerous, and in general, ill-advised."  *Id.*, PageID # 1166.

Crothers has indicated that hiring a specialist to assist Kohala Coast in the regulatory process is "impossible" because this situation is so unusual or so small that no consultant will help him.  ECF No. 147, PageID #s 1139-40. While Crothers may have had difficulty hiring someone to help him with the regulatory process, at the end of the day this court ordered that he complete that process before touching the sunken vessel.  He has had years to do so, but has not done so. In fact, Crothers appears to misapprehend what this court has ordered to date.  In an email dated May 1, 2023, Crothers implies that because this court has ordered him to comply with the regulatory process, state agencies must provide him with progress and status updates.  *See* ECF No. 147, PageID #s 1149-50.  Neither the court's appointment of Crothers as substitute custodian nor its order that he make progress with the permitting process requires any state agency to act in any manner.

## III.   THE COURT DISMISSES THIS ACTION FOR LACK OF PROSECUTION.

Rule 41(b) of the Federal Rules of Civil Procedure allows a defendant to file a motion seeking dismissal of an action for failure to prosecute or for failure to comply with court orders.  "District courts have the inherent power to control their dockets and in the exercise of that power they may impose sanctions including, where appropriate, dismissal of

12

a case." The Supreme Court has recognized that, as part of that inherent discretion, district courts have the power to *sua sponte* dismiss an action for lack of prosecution. *See Link v. Wabash R.R. Co.,* 370 U.S. 626, 630–31 (1962) ("The power to invoke this sanction is necessary in order to prevent undue delays in the disposition of pending cases and to avoid congestion in the calendars of the District Courts."). Here, the State of Hawaii, which is not a named Defendant, has requested dismissal of this action. *See* ECF No. 148. Whether under Rule 41(b) or through the court's inherent power, dismissal is appropriate for the reasons set forth below.

A district court must weigh five factors when examining whether to dismiss a case for lack of prosecution: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the defendant; (4) the public policy favoring the disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See Bautista v. Los Angeles Cnty.*, 216 F.3d 837, 841 (9th Cir. 2000); *Fernandez v. Rice*, 2017 WL 988103, at *3 (D. Haw. Mar. 14, 2017). Balancing the five factors in this case, the court determines that dismissal of Kohala Coast's Verified Complaint without prejudice is an appropriate sanction for its failure to prosecute this case.

13

Kohala Coast has been on notice since July 2022 that this court was concerned about its lack of prosecution of this action.  Following years of administrative closure, this court reopened the case and ordered Kohala Coast to show cause why this action should not be dismissed for lack of prosecution. *See* ECF No. 138.  In its August 17, 2022, response to the order to show cause, Kohala Coast demonstrated that it had made some progress towards getting necessary permits to excavate the Vessel, as required by the court's order of January 4, 2013. Specifically, Kohala Coast had obtained a "Nationwide Permit" from the U.S. Army Corps of Engineers on June 17, 2022.  In light of this "forward progress," the court declined to dismiss the action on October 5, 2022, ordering that, within a year, Kohala Coast "shall file a status report with respect to its attempts to secure all necessary permits.  In the report, [Kohala Coast] should identify the applicable local, state, and federal laws and detail [its] attempts to comply with them." ECF No. 143.  The court warned Kohala Coast that, "if, upon filing its next status report, [Kohala Coast] does not convince this court that it has obtained all necessary permits and authorizations or is well on its way to doing so this court may dismiss the case sua sponte."  *Id.*

In its filing of October 5, 2023, Kohala Coast did not demonstrate that it had made any material advancement over

the past year towards obtaining the permits necessary to excavate the Vessel.  Instead, it argued that its "Nationwide Permit" of June 17, 2022, essentially preempted all other permit requirements, asserting that the "Nationwide Permit," by itself, allowed that excavation.  But the "Nationwide Permit" clearly stated that "neither the Corps' [June 16, 2022,] NWP verification nor this notification to proceed with work in navigable waters of the U.S. obviates your responsibility to obtain other Federal, state and/or local authorizations required by law before commencing work."  ECF No. 139-2, PageID #824.  This statement is consistent with the administrative regulations governing U.S. Army Corps of Engineers' Nationwide Permits, which state in relevant part, "It is important to remember that the NWPs only authorize activities from the perspective of the Corps regulatory authorities and that other Federal, state, and local permits, approvals, or authorizations may also be required."  33 C.F.R. § 330.4(a).  Thus, the "Nationwide Permit," by itself, does not establish that no other state permit or regulatory approvals are necessary before Kohala Coast may excavate the Vessel.

Kohala Coast also fails to establish the inapplicability of various Hawaii permit or regulatory approvals.  In the court's order of October 5, 2022, the court unambiguously ordered that Kohala Coast, within one year,

15

"should identify the applicable local, state, and federal laws and detail [Kohala Coast's] attempts to comply with them."  ECF No. 143.  Buried in Footnote 29 of the October 5, 2023, motion, Kohala Coast says Hawaii's Department of Land and Natural Resources has identified three required documents for excavating the Vessel--1) an environmental assessment pursuant to section 343-5(2) of Hawaii Revised Statutes; 2) a Conservation District Use Permit pursuant to section 183C-6 of Hawaii Revised Statutes; and 3) a Special Activities Permit pursuant to section 187A-6 of Hawaii Revised Statutes.  *See* ECF No. 144, PageID # 945, n.29.  Kohala Coast says it spent the last year attempting to obtain those required documents.  *See* ECF No. 144, PageID # 945.  The documents it submits in support of that position unequivocally demonstrate the opposite.  Kohala Coast did not meaningfully attempt to comply with Hawaii's requirements.  Its applications were either deficient or demonstrated hostility towards the process.  *See* ECF No. 147, PageID #s 1160, 1164, 1166.  Nor has Kohala Coast demonstrated the inapplicability of all of those documents.

Kohala Coast represents that it went through a lengthy process with the U.S. Army Corps of Engineers to get its Nationwide Permit.  The details of that process are not part of the record before the court.  Kohala Coast represents, for example, that it "submitted an extensive EA to the Corps as

16

part of its permitting process" and then argues that it should
not have to submit a duplicative environmental assessment to
Hawaii.  *See* ECF No. 144, PageID # 954.  It similarly
represents that it submitted a Coral Remediation Plan to the
U.S. Army Corps of Engineers as part of its Nationwide Permit
application and again argues that it should not have to
duplicate that work by getting a Hawaii Special Activities
Permit.  *Id.*  What was submitted to the U.S. Army Corps of
Engineers is not part of the record.  This court therefore
cannot evaluate those representations.  What is abundantly
clear is that this court ordered Kohala Coast to figure out
what permits are required and to obtain or be well on its way
to obtaining those permits.  Kohala Coast did not do that and
is now belatedly arguing that the process before the U.S. Army
Corps of Engineers should suffice, without providing this court
with any details of that process.  If Kohala Coast believed
that its Nationwide Permit was the only thing necessary to
begin excavation, then it could have, of course, proceeded at
its own risk.  It did not do so.  This court declines to rule
on the sparse record before this court that the Nationwide
Permit is the only permit necessary for Kohala Coast to begin
excavation of the Vessel.  That request is far from any claim
asserted in the Verified Complaint, especially when that permit
expressly states that it does not obviate Kohala Coast's

17

responsibility to obtain other applicable federal, state, and local authorizations.

This court also declines Kohala Coast's invitation to place covenants and conditions on any excavation pursuant to the Nationwide Permit.  This court is not an expert with respect to environmental, cultural, or historic considerations. The reason the court required Kohala Coast to obtain all applicable federal, state, and local authorizations before excavating the vessel was to allow persons with such expertise to weigh in on the excavation process.  While Kohala Coast argues that, under maritime and admiralty law, the salvage of a vessel in near shore United States waters should be under federal supervision, the agency from which it received its permit noted that it did not relieve Kohala Coast from other applicable federal, state, and local requirements.  Under the present record, Kohala Coast fails to demonstrate that it should be allowed to excavate the vessel solely based on the Nationwide Permit issued to it by the U.S. Army Corps of Engineers.

While the court understands the difficulty of deciphering and negotiating Hawaii's laws and regulations, that is something the court expected Kohala Coast to do, giving it ample time to figure out what laws and regulations applied.  If Kohala Coast could not itself determine what laws and

18

regulations applied, it should have hired an expert to help it. It did not, saying that it was "impossible" to hire such a consultant because this situation is too unusual or too small. Kohala Coast, however, did not detail its attempts to hire a consultant.

What the court is left with is a statement by Crothers saying he is "trying to the best of ability to get these permits from the state of Hawaii." ECF No. 147, PageID # 1141. Crothers's efforts fall short of what the court required Kohala Coast to do.

The court additionally understands that Kohala Coast did not want to make public the location of the Vessel, as required by the Hawaii's environmental assessment requirements. Kohala Coast was certainly entitled to worry that others might try to steal the treasure while Kohala Coast was obtaining the necessary permits. But when the court appointed Kohala Coast substitute custodian of the Vessel, it placed it "in its custody for possession and safekeeping." ECF No. 24, PageID # 135. Kohala Coast could have hired security to protect the Vessel and could have sought to charge the costs of such security as an administrative expense for which it could have been paid from the sale of artifacts recovered from the Vessel. Kohala Coast chose not to incur such an expense (possibly because it was worried that the Vessel would not actually

19

contain any treasure).  *See* ECF No. 139-3, PageID # 828 ("I
think that it's important to note that there is still a
tremendous amount of speculation as to whether there is even
anything of value at the proposed wreck site.").  In fact, at
the hearing on this matter, Kohala Coast indicated that it did
not want to spend any money if the Vessel did not contain
treasure.  Having not spent money to secure the Vessel, Kohala
Coast argues that it should be allowed to skirt Hawaii's public
disclosure provisions in the name of safety and security.

     Despite the court's warning that it might *sua sponte*
dismiss this action if Kohala Coast failed to "convince this
court that it has obtained all necessary permits and
authorizations or [that it] is well on its way to doing so,"
Kohala Coast is essentially in the same position that it was in
with respect to permits in the summer of 2022.  Given the lack
of progress in this very old case, the court determines that
dismissal of this action is appropriate.  The public's interest
in expeditious resolution of litigation and the court's need to
manage its docket weigh heavily in favor of dismissal.  This
case is more than a decade old, and Kohala Coast has failed to
show that it has made sufficient progress towards its ultimate
goal of excavating the Vessel.  This dismissal is not on the
merits and is without prejudice to the filing of a new action.
There is therefore no prejudice to Kohala Coast, the Defendant

Vessel, or the State of Hawaii, which filed a Verified
Statement of Interest on March 13, 2013.  The Vessel is not
going anywhere and its location is generally a secret.  Kohala
Coast remains free to file another action seeking relief with
respect to the Vessel and the State of Hawaii, which should
likely be named as a Defendant given its claim of possible
ownership of the Vessel.

While public policy favors disposition of cases on
their merits, that factor is clearly outweighed by the age of
this case and the lack of progress.  Finally, less drastic
sanctions would not assist in bringing this case to its end.
Kohala Coast has had ample time to attempt to get necessary
authorizations, but has demonstrated that it either cannot or
will not proceed with Hawaii's requirements.  When the court
balances the five *Bautista* factors, it concludes that dismissal
of this action is appropriate.

## IV.      CONCLUSION.

The court dismisses this action without prejudice for
lack of prosecution.  Kohala Coast has had more than a decade
to determine what authorizations are necessary to excavate the
Vessel.  Kohala Coast has not demonstrated that it has obtained
such authorizations or that it is well on its way to do so.
The only thing that it has obtained is a permit from the U.S.
Corps of Engineers that specifically says it does not obviate

the need to obtain applicable federal, state, and local authorizations.  This court put Kohala Coast on notice that it had a year to identify and obtain (or at least make significant progress toward obtaining) such authorizations.  Kohala Coast has failed to prosecute this action despite the court's warning that it might dismiss it.

Given the dismissal of this action, the court dissolves its orders arresting the vessel and appointing Kohala Coast as substitute custodian.

The dismissal of the Complaint is without prejudice to the filing of a new complaint asserting claims against Defendants who may assert ownership of the Vessel or its contents.  If any such new complaint is filed in this court in the next twelve months, the action shall be assigned to this judge as a "related case."  Kohala Coast should show the Clerks' Office a copy of this order if it does file a new case.

The Clerk of Court is directed to close this case after entering judgment against Plaintiff for failure to prosecute.

It is so ordered.

DATED: Honolulu, Hawaii, November 14, 2023.



/s/ Susan Oki Mollway
Susan Oki Mollway
United States District Judge

*Kohala Coast Enterprises, LLC, v. The Unidentified Shipwrecked Vessel*, Civil NO. 12-00552 SOM-WRP; ORDER DENYING MOTION FOR RELIEF FROM JUDGMENT OR ORDER AND DISMISSING VERIFIED COMPLAINT WITHOUT PREJUDICE FOR LACK OF PROSECUTION